UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| PHARMERICA MIDWEST, LLC d/b/a PHARMERICA, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| BRAVO CARE OF GALESBURG, INC. d/b/a ROSEWOOD CARE CENTER OF GALESBURG, | ) ) ) ) ) |
| Defendant. | ) |

Case No. 4:20-cv-04023-SLD-JEH

## ORDER

Before the Court is Plaintiff PharMerica Midwest, LLC d/b/a PharMerica's Motion for Default Judgment, ECF No. 8. For the following reasons, the motion is GRANTED. Plaintiff is awarded $122,631.46 in damages for unpaid invoices, $27,385.94 in prejudgment interest, post-judgment interest accruing at the statutory rate prescribed by 28 U.S.C. § 1961, $71,999.00 in damages for lost profits, $10,398.50 in attorney's fees, and $509.99 in costs.

## BACKGROUND[1]

Plaintiff entered into a Pharmacy Services Agreement ("PSA") with Defendant Bravo Care of Galesburg, Inc. d/b/a Rosewood Care Center of Galesburg, effective September 1, 2014, for Plaintiff to provide pharmacy-related goods and services to the residents of a facility operated and managed by Defendant ("the Facility"). Under the PSA, Plaintiff would be the exclusive and preferred provider of pharmacy-related goods to Defendant. The PSA provided that

---

[1] The factual background is taken from the complaint, ECF No. 1, which the Court accepts as true because a default judgment has been entered against Defendant. *See Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983) ("Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true.").

Defendant was to pay the amount due for each month within ninety days of the statement date. If payment was not made within the ninety-day period, interest would accrue at the lower of an annualized rate of ten percent or the highest rate permitted by applicable law. If the operator of the Facility was to change, Defendant was required to give Plaintiff thirty days' advance notice and pay all outstanding amounts before the change occurred.

Either party had the option under the PSA to terminate the agreement for any reason by providing the other party with written notice of non-renewal at least thirty days before the expiration of the current term of the agreement.  If no such notice was given, the PSA would automatically renew for an additional one-year term.  The initial term of the PSA ended on August 31, 2016; it was then automatically renewed for successive one-year terms, most recently on August 31, 2018.  As such, the PSA was in effect through August 31, 2019.

Defendant submitted orders to Plaintiff, which Plaintiff filled and delivered to Defendant.  Plaintiff submitted detailed written monthly invoices to Defendant for the orders.  Defendant did not object to or dispute the invoice charges.  However, it failed to pay these invoices as they became due and has continued to refuse to pay, despite Plaintiff's demands for payment.

On March 26, 2019, Plaintiff received verbal notice that, effective April 1, 2019, Defendant would be transferring operations of the Facility to Aperion Care Galesburg North, LLC ("Aperion").  Aperion notified Plaintiff that it would not be using Plaintiff as the provider of pharmacy-related goods and services for the Facility, effective April 15, 2019.  Defendant did not give Plaintiff the required thirty days' notice of a transfer.  It also failed to pay all outstanding amounts prior to the change in operators, as required by the PSA.  Because of

Defendant's failure to comply with the terms of the PSA, the PSA did not properly terminate and remained in effect through August 31, 2019, the end of its current term.

On February 11, 2020, Plaintiff filed suit for breach of contract. Compl., ECF No. 1.[2] The complaint alleges that the PSA is a valid and binding agreement between Plaintiff and Defendant, that Plaintiff performed all of its obligations under the PSA, and that Defendant "materially breached the PSA . . . by failing to pay sums due and owing for the goods and services provided, failing to provide [Plaintiff] with the requisite written notice of the operations transfer to Aperion, and failing to maintain [Plaintiff] as the exclusive provider of pharmacy-related goods and services to the Facility for the duration of the PSA." *Id*. ¶¶ 36–38. Plaintiff seeks compensatory damages; lost profits for the orders that would have been placed between April 15, 2019 and August 31, 2019; "[t]he imposition of a constructive trust on sums received by [Defendant] as Medicare reimbursement for pharmaceutical products and services provided by [Plaintiff] and not paid for by Defendant[]"; prejudgment and post-judgment interest; and Plaintiff's costs, fees, and attorney's fees. *Id*. at 8, ¶ 39.

Defendant was served on February 17, 2020, *see* ECF No. 4, but failed to plead or otherwise defend, so the Clerk entered Defendant's default on March 27, 2020 at Plaintiff's request, *see* Mar. 27, 2020 Text Order. Plaintiff now seeks the entry of default judgment in the amount of $122,631.46 in damages for unpaid invoices, $15,346.64 in prejudgment interest through April 10, 2020, *per diem* interest in the amount of $35.10 for each day between April 10, 2020 and entry of judgment against Defendant, post-judgment interest from the date of judgment

---

[2] The Court has jurisdiction over this matter on the basis of diversity. *See* Compl. ¶¶ 2–4 (stating that the parties are citizens of different states and alleging that the amount in controversy exceeds $75,000, exclusive of interest and costs).

accruing at the applicable rate, $71,999 in damages for lost profits, $10,398.50 in attorney's fees, and $509.99 in costs. Mot. Default J. ¶ 7.

## DISCUSSION

### I. Legal Standard

A court may enter judgment against a defaulted party under Federal Rule of Civil Procedure 55(b)(2). A default judgment establishes, as a matter of law, that a defendant is liable to a plaintiff as to each cause of action alleged in the complaint. *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007). After default is entered, "the well-pleaded allegations of a complaint relating to liability are taken as true." *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983). However, allegations as to the amount of damages are not. *Id.* A court must conduct a hearing on damages unless "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Id.*

### II. Analysis

#### a. Liability

The Court finds it appropriate to enter default judgment against Defendant under Rule 55(b)(2). Defendant is found liable as a matter of law for breaching the PSA by failing to pay Plaintiff for the goods and services it provided, failing to provide Plaintiff with the requisite written notice when operations of the Facility were transferred to Aperion, and failing to maintain Plaintiff as the exclusive provider of pharmacy-related goods and services to the Facility for the duration of the PSA, as alleged in the complaint. *See* Compl. ¶ 38.

### b. Damages

The Court finds it unnecessary to hold a hearing on damages because Plaintiff has requested specific amounts and has submitted documentary evidence and affidavits in support of its requests. The amounts requested are "capable of ascertainment" from documentary evidence or affidavits. *See Dundee Cement*, 722 F.2d at 1323. Thus, the only task remaining for the Court is to determine whether the relief requested by Plaintiff is supported by the facts alleged in the complaint and Plaintiff's documentary evidence and affidavits. *See e360 Insight*, 500 F.3d at 602.

#### i. Damages for Unpaid Invoices

Plaintiff requests $122,631.46 in damages for unpaid invoices. Mot. Default J. ¶ 7(A). In support of this request, Plaintiff provides a spreadsheet detailing the amounts of each unpaid invoice, *see* Open Invoice List, Rodriguez Aff. Ex. B, ECF No. 9-3, and the affidavit of Michael Rodriguez, the Director of Collections of Client Billing Services for Plaintiff, Rodriguez Aff. ¶ 2, Mot. Default J. Ex. 3, ECF No. 9-1. Rodriguez is the custodian of Plaintiff's records for the debt owed to it by Defendant, and he personally reviewed the documents in Plaintiff's file and the transaction histories relevant to Defendant's debt prior to making the affidavit. *Id*. He explains that the Open Invoice List is "[a]n accurate list of the remaining unpaid invoice amounts due and owing by Defendant under the terms of the [PSA]," *id*. ¶ 12, declares that "Defendant received those invoices," *id*. ¶ 5, and swears that "[t]he prices on the invoices for the goods and services provided by [Plaintiff] were in accordance with the [PSA] concerning pricing," *id*. ¶ 6. The Open Invoice List contains entries for thirteen invoices and displays the amounts of those invoices and the amounts that remain due. The amounts due add up to a grand total of $122,631.46, which is the amount Plaintiff seeks in damages for the unpaid invoices. Rodriguez

also states in his affidavit that Defendant owes Plaintiff $122,631.46 in unpaid invoices. Rodriguez Aff. ¶ 23.

The Court is satisfied that the evidence before it supports an award of damages for the unpaid invoices requested. Plaintiff is awarded $122,631.46 in damages for unpaid invoices.

   **ii.   Prejudgment Interest**

In addition to damages for the unpaid invoices, Plaintiff asks the court for $15,346.64 in prejudgment interest through April 10, 2020 and, additionally, *per diem* interest in the amount of $35.10 for each day between April 10, 2020 and entry of judgment. Mot. Default J. ¶ 7(B). It provides in support the Rodriguez affidavit and a spreadsheet showing calculations for the interest that has accrued on each unpaid invoice, *see* Interest Calculation, Rodriguez Aff. Ex. C, ECF No. 9-4. Also attached to the Rodriguez affidavit is a copy of the PSA, with confidential information redacted. *See* PSA, Rodriguez Aff. Ex. A, ECF No. 9-2.

The governing document in this case—the PSA—is a legally binding contract. In Illinois, "the interpretation of a contract presents a question of law that is decided by the court."[3] *Rickher v. Home Depot, Inc.*, 535 F.3d 661, 664 (7th Cir. 2008). A court's principle task in interpreting a contract is "to discern the parties' intent from the contract language." *Buenz v. Frontline Transp. Co.*, 882 N.E.2d 525, 528–29 (Ill. 2008). Where the words are "clear and unambiguous, they must be given their plain, ordinary and popular meaning." *Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011).

---

[3] "[A] federal court sitting in diversity applies the substantive law of the state in which it is sitting," *Protective Life Ins. Co. v. Hansen*, 632 F.3d 388, 392 (7th Cir. 2011), and "[w]hen neither party raises a conflict of law issue in a diversity case, the applicable law is that of the state in which the federal court sits," *RLI Ins. Co. v. Conseco, Inc.*, 543 F.3d 384, 390 (7th Cir. 2008). Because this Court has diversity jurisdiction over this action and is sitting in Illinois—and because Plaintiff has not provided any indication that it believes a different state's law should apply—Illinois law governs.

The PSA provides that Defendant "shall remit payment for Facility Charges to [Plaintiff] within ninety (90) days of the statement date," and that "[f]or any undisputed amount owed that has not been paid within . . . ninety (90) days, interest will be charged on all outstanding amounts and calculated at an annualized rate of ten (10%) percent or the highest rate permitted by Applicable Law whichever is less from the due date until the outstanding amount and interest is paid in full." PSA § 6(D). The Interest Calculation spreadsheet lists out the amount due on each invoice and the number of days each invoice was past due as of April 10, 2020, the day the Motion for Default Judgment was filed. It also shows the interest rate *per diem*, calculated using the annualized interest rate of ten percent, and then, for each invoice, uses the interest rate *per diem* to calculate the accrued interest. Added together, the total amount of accrued interest as of April 10, 2020 comes to $15,346.64. The spreadsheet also provides the *per diem* interest accruing for each invoice, calculated using the total invoice amount due multiplied by the *per diem* interest rate; added together, the invoices generate $35.10 per day in interest. Plaintiff seeks this amount in interest for each day between April 10, 2020 and the date judgment is entered. *See* Rodriguez Aff. ¶ 14.

The terms of the PSA make clear that any invoices that have not been paid within ninety days accrue interest at the lower of an annualized rate of ten percent or the highest rate permitted by applicable law. The Court finds that the annualized rate of ten percent is the applicable standard here.[4] The Interest Calculation spreadsheet shows how Plaintiff calculated the amount

---

[4] In diversity suits, state law governs whether a party may receive an award of prejudgment interest. *See Travelers Ins. Co. v. Transp. Ins. Co.*, 846 F.2d 1048, 1053 (7th Cir. 1988) ("[S]tate law applies to an award of prejudgment interest in diversity suits . . . ."). In Illinois, an express contract provision providing for interest at a specified rate will allow a party to recover that amount; if no such provision exists, a party may receive prejudgment interest only at the statutory rate. *Premier Elec. Constr. Co. v. Am. Nat'l Bank of Chi.*, 658 N.E.2d 877, 888 (Ill. App. Ct. 1995) ("Under Illinois law, absent an express contract provision allowing interest at a specific rate, a party is only entitled to prejudgment interest at the statutory rate from the date payment is due to the date of entry of the judgment."); *cf. Andersons, Inc. v. Walker*, Nos. 08-CV-2083, 08-CV-2098, 2010 WL 2178569, at *2 (C.D. Ill. May 27, 2010) (holding that the plaintiff could only recover prejudgment interest at the statutory rate because the personal

of accrued interest for each invoice prior to April 10, 2020 and the amount of interest accruing each day after that date. These amounts match what Plaintiff is requesting. The Court is satisfied that the evidence supports an award of unpaid interest through April 10, 2020 in the amount of $15,346.64 and $35.10 in interest each day between April 10, 2020 and the date of the entry of judgment against Defendant ($12,039.30), which comes to a total of $27,385.94.

### iii. Post-Judgment Interest

Plaintiff also requests post-judgment interest from the date of judgment accruing at the applicable rate. Mot. Default J. ¶ 7(C). 28 U.S.C. § 1961(a) provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court," to be "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment." (footnote omitted). Such "[i]nterest shall be computed daily to the date of payment . . . and shall be compounded annually." *Id*. § 1961(b). This federal statute applies to post-judgment interest even in diversity cases such as this action. *See Travelers Ins. Co. v. Transp. Ins. Co*., 846 F.2d 1048, 1053 (7th Cir. 1988) ("While state law applies to an award of prejudgment interest in diversity suits, federal law governs the award of post-judgment interest in cases such as this one."). As Plaintiff has been granted money damages, *see supra* II(b)(i), the Court will award Plaintiff post-judgment interest accruing at the statutory rate prescribed by 28 U.S.C. § 1961.

---

guarantees and contracts at issue "d[id] not include an express provision setting a specific rate of interest"). Because the contract at issue here contains a provision explicitly providing for interest at a specified rate, and Illinois allows parties to contract for a specified rate of interest, the Court does not find that there is a lower rate prescribed by Illinois law that should apply instead. Thus, the Court will use the annualized interest rate of ten percent for the prejudgment interest calculation.

### iv. Lost Profits

Plaintiff requests damages for lost profits in the amount of $71,999.00. Mot. Default J. ¶ 7(D). The Rodriguez affidavit clarifies that this amount is for the four-and-a-half months between April 15, 2019, when Aperion ceased using Plaintiff to provide goods and services, and August 31, 2019, the date on which Plaintiff alleges the final term of the PSA ended. Rodriguez Aff. ¶ 22. Attached to the affidavit is a calculation of the amount of lost profits. *See* Lost Profits Summ. Using Q1 2019, Rodriguez Aff. Ex. D, ECF No. 9-5.

The PSA provides that it would renew automatically for successive one-year terms unless it was terminated by providing the other party with written notice of non-renewal at least thirty days prior to the expiration of the current term. PSA §§ 2, 7(A). Plaintiff alleges that the most recent renewal of the PSA occurred on August 31, 2018, providing for a term through August 31, 2019. Compl. ¶ 14. Plaintiff received verbal notice on March 26, 2019 that Defendant would be transferring operations of the Facility to Aperion, effective April 1, 2019, and that effective April 15, 2019, Aperion would cease to utilize Plaintiff as the provider of goods and services to the Facility. Defendant did not properly terminate the PSA when it transferred operations; thus, the PSA remained in effect through August 31, 2019. The Lost Profits Summary uses data from the first quarter of 2019—in which Plaintiff *was* providing goods and services to Defendant—to estimate how much Plaintiff lost per month between April 15, 2019 and August 31, 2019, multiplied by 4.5 months to reach a final estimate of lost profits of $71,999. Lost Profits Summ. Using Q1 2019.

"Lost profits, by their very nature, will always be uncertain to some extent and incapable of calculation with mathematical precision." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 770 N.E.2d 177, 199 (Ill. 2002). Damages for lost profits "will be allowed only if:

9

their loss is proved with a reasonable degree of certainty; the court is satisfied that the wrongful act of the defendant caused the loss of profits; and the profits were reasonably within the contemplation of the defaulting party at the time the contract was entered into." *Milex Prods., Inc. v. Alra Lab'ys, Inc.*, 603 N.E.2d 1226, 1235 (Ill. App. Ct. 1992). For profits that were lost when a contract was breached, "those profits are considered one of the elements of the contract and are presumed to have been within the contemplation of the defaulting party at the time he entered into the contract." *Id.* As the Court has determined that Defendant is liable for breaching the PSA, *see supra* II(a), and that 4.5 months' worth of potential profits were therefore lost due to Defendant's actions, Plaintiff will be granted lost profit damages if the amount can be "proved with a reasonable degree of certainty," *Milex Prods.*, 603 N.E.2d at 1235.

Generally, under Illinois law, "an established business is able to satisfy its evidentiary burden by providing data about its past profits." *Smart Mktg. Grp. Inc. v. Publ'ns Int'l Ltd.*, 624 F.3d 824, 829 (7th Cir. 2010); *see also Tri-G, Inc. v. Burke, Bosselman & Weaver*, 856 N.E.2d 389, 407 (Ill. 2006) ("A plaintiff may satisfy the requirement of proving with a reasonable basis or with reasonable certainty damages for claimed lost profits through evidence of past profits in an established business."). Plaintiff is an established business; it received orders from Defendant for pharmacy-related goods and services between September 1, 2014 and April 15, 2019. Thus, it is able to provide data as to the volume of orders received from Defendant in past months to serve as an estimate of profits lost in the 4.5 months after Aperion ceased using Plaintiff as exclusive provider. And it is exactly this type of data that Plaintiff uses to estimate the profits lost during those months. This suffices as a calculation of lost profits damages under Illinois law. The Court therefore finds that Plaintiff has adequately supported its request for $71,999 in lost profits.

### v. Attorney's Fees and Court Costs

Finally, Plaintiff requests $10,398.50 in attorney's fees and $509.99 in court costs. Mot. Default J. ¶ 7(E), (F). In support of these amounts, Plaintiff provides an affidavit from its counsel of record Jennifer Metzger Stinnett of Fultz Maddox Dickens PLC ("FMD"), Stinnett Aff., Mot. Default J. Ex. 1, ECF No. 8-1, along with a summary of the hours expended on the matter by her, another attorney at FMD, William H. Mazur, and a paralegal, Amy L. Hoagland, FMD Att'y Summ. Report, Stinnett Aff. Ex. A, ECF No. 8-2; a time report describing in detail the tasks performed by Stinnett, Mazur, and Hoagland, FMD Time Report, Stinnett Aff. Ex. B, ECF No. 8-3; and a list of the costs incurred by the firm, FMD Cost Report, Stinnett Aff. Ex. C, ECF No. 8-4, and an affidavit from Plaintiff's local counsel Robert J. Noe of Bozeman, Neighbour, Patton & Noe, LLP ("BNPN"), Noe Aff., Mot. Default J. Ex. 2, ECF No. 8-5, along with a time report detailing the tasks performed by Noe and the costs his firm incurred, BNPN Statement, Noe Aff. Ex. A, ECF No. 8-6.

In Illinois, a successful litigant may recover attorney's fees from the opposing party if a statute or contractual provision so provides. *Cf. Fednav Int'l Ltd, v. Cont'l Ins. Co.*, 624 F.3d 834, 839 (7th Cir. 2010) ("Illinois generally recognizes the American Rule that, absent a statute or contractual provision, a successful litigant must bear the burden of his or her own attorney's fees." (quotation marks omitted)). But while "Illinois law governs whether a court should award attorneys' fees pursuant to an indemnity provision in a contract, the method of determining attorneys' fees is a procedural issue governed by federal law in a diversity suit." *Cap. One Auto Fin., Inc. v. Orland Motors, Inc.*, No. 09-cv-4731, 2012 WL 3777025, at *4 (N.D. Ill. Aug. 27, 2012) (citing *Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1076 (7th Cir. 2004)). Here, the PSA establishes that "[i]f either party brings a lawsuit to enforce any of the terms or

conditions of this [PSA], the prevailing party in the lawsuit is entitled to recover costs and reasonable attorneys' fees," PSA § 18(I), clearly providing for the recovery of such fees. The Court will look to federal law to evaluate whether Plaintiff's requested attorney's fees are reasonable.

In a contractual fee-shifting case, "the nature and scope of a court's determination as to whether attorneys' fees are reasonable is more limited" than in a statutory fee-shifting case. *Orland Motors*, 2012 WL 3777025, at *4. The Seventh Circuit has held that, while indemnity agreements have "an implied limit to reasonable fees, . . . reasonableness must be assessed using the market's mechanisms." *Medcom Holding Co. v. Baxter Travenol Lab'ys, Inc.*, 200 F.3d 518, 520, 521 (7th Cir. 1999) (indicating that reasonable fees are "fees that commercial parties would have incurred and paid knowing that they had to cover the outlay themselves" (quotation marks omitted)); *see also Balcor Real Est. Holdings, Inc. v. Walentas-Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996) ("Courts award fees at the market rate, and the best evidence of the market value of legal services is what people pay for it."). Under this standard, a court should not conduct "a detailed, hour-by-hour review after the fashion of a fee-shifting statute" but should "undertake[] an overview of [the prevailing party's] aggregate costs to ensure that they were reasonable in relation to the stakes of the case and [the losing party's] litigation strategy." *Medcom*, 200 F.3d at 521; *see, e.g.*, *Orland Motors*, 2012 WL 3777025, at *5 (finding that the request for attorney's fees was reasonable where the attorney attested that his hourly rate was at or below the prevailing rate for a lawyer with comparable experience, where the amount of time the attorney spent on the matter "d[id] not strike the [c]ourt as an effort by [the attorney] to run up costs," and where the amount requested "represent[ed] approximately 1.6% of the total amount of compensatory damages previously awarded").

12

In this case, Stinnett, a partner at FMD, reported an hourly rate of $330; Mazur, an associate, had an hourly billing rate of $285; and Hoagland, a paralegal, billed at an hourly rate of $145. Stinnett Aff. ¶¶ 11, 13, 14. Stinnett attests that "[a]ll of the hourly rates for these attorneys and paralegal are the firm's customary hourly rates for commercial litigation cases such as this one," *id*. ¶ 15, that "FMD regularly receives payment from its clients, including [Plaintiff], at such rates," *id*., and that "[b]ased on [her] knowledge of the hourly rates of commercial litigation attorneys in Louisville, Kentucky, FMD's hourly rates are within the range of what is commonly charged," *id*. ¶ 16. Noe, a partner at BNPN, billed at an hourly rate of $275, which, he confirms, "is the firm's customary hourly rate[] for commercial litigation cases such as this one" and is a rate at which the firm "regularly receives payment from its clients." Noe Aff. ¶¶ 11–12. And "[b]ased on [his] knowledge of the hourly rates of commercial litigation attorneys in Moline[,] Illinois, BNPN's hourly rates are within the range of what is commonly charged." *Id*. ¶ 13.

That FMD and BNPN customarily bill these hourly rates for commercial litigation matters is evidence that the rates are reasonable; even more persuasive is that Plaintiff itself has regularly paid FMD the rates it requests here. *See Balcor*, 73 F.3d at 153 ("[T]he best guarantee of reasonableness is willingness to pay."). Furthermore, these numbers are consistent with market rates in the Central District of Illinois. *See Jackson v. City of Peoria*, No. 17-1129, 2019 WL 5103806, at *7–8 (C.D. Ill. Oct. 11, 2019) (finding a rate of $425 per hour for an attorney with over twenty years' experience consistent with the market in the Central District of Illinois); *Abellan v. HRDS Le Roy IL, LLC*, No. 16-1037, 2018 WL 6247260, at *10 (C.D. Ill. Nov. 29, 2018) (determining that a request for attorney's fees was reasonable where "[the p]laintiff's

13

attorneys and paralegals have mostly billed at rates between $150 and $400 per hour"). The hourly rates charged by Plaintiff's counsel are reasonable.

Without conducting a "detailed, hour-by-hour review," *Medcom*, 200 F.3d at 521, the Court also finds that the number of hours expended by Plaintiff's counsel on this matter is reasonable. Stinnett recorded 6.20 hours of work on this case, FMD Att'y Summ. Report, Mazur 17.60, *id.*, Hoagland 6.70, *id.*, and Noe 8.60, BNPN Statement 3, 5, totaling 39.10 hours. The Court does not find that this number is unreasonable or that it is indicative of an attempt to run up costs, *see Orland Motors*, 2012 WL 3777025, at *5. And the total amount requested in attorney's fees—$10,398.50—is less than five percent of the damages and prejudgment interest Plaintiff requests in this action. The Court finds that the attorney's fees requested by Plaintiff are reasonable and thus awards it $10,398.50 in attorney's fees. Finally, because the PSA allows the prevailing party to recover costs, *see* PSA § 18(I), and because the request for costs is adequately supported, *see* FMD Cost Report; BNPN Statement 5, the Court also awards Plaintiff the $509.99 it spent in costs on this case.[5]

## CONCLUSION

Accordingly, Plaintiff's Motion for Default Judgment, ECF No. 8, is GRANTED. Defendant is liable as a matter of law as to all the causes of action alleged in the complaint, and Plaintiff is awarded $122,631.46 in damages for unpaid invoices, $27,385.94 in prejudgment interest, post-judgment interest accruing at the statutory rate prescribed by 28 U.S.C. § 1961, $71,999 in damages for lost profits, $10,398.50 in attorney's fees, and $509.99 in costs. The Clerk is directed to enter judgment and close the case.

---

[5] As a final note, the Court recognizes that the relief it awards Plaintiff does "not differ in kind from . . . what is demanded in the [complaint]." *See* Fed. R. Civ. P. 54(c); *see also* Compl. 8 (requesting an award of compensatory damages; an award of lost profits; Plaintiff's costs, fees, and disbursements, including reasonable attorney's fees; and prejudgment and post-judgment interest).

14

Entered this 19th day of March, 2021.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
